UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CARMEN D. TIFA, *pro se*,

                Plaintiff,

         -against-

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                Defendant.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
08-CV-3060 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Plaintiff Carmen D. Tifa filed an application for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., on February 23, 2004. Plaintiff's application was denied by an Administrative Law Judge ("ALJ") on January 2, 2008, and review of that decision was denied by the Appeals Council on May 30, 2008. Plaintiff filed the instant action, *pro se*, seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). On March 3, 2009, the Commissioner moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. Plaintiff indicated on March 2, 2009 that she would not oppose Commissioner's motion. For the reasons set forth more fully below, the court finds that substantial evidence supports the ALJ's decision and that the decision is free of legal error. The Commissioner's motion is granted, and the ALJ's decision is affirmed.

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff appeared with counsel and testified with the assistance of a Spanish language interpreter at a hearing held before an Administrative Law Judge ("ALJ") on August 30, 2006.

By decision dated September 15, 2006, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. On January 12, 2007, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings, and directed the ALJ to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base.

On December 6, 2007, plaintiff appeared with counsel and testified with the assistance of a Spanish language interpreter along with vocational expert Pat Green at a supplemental hearing held before the ALJ. The ALJ evaluated plaintiff's claim of disability *de novo* and, on January 2, 2008, found that plaintiff was not disabled, because she retained the residual functional capacity to perform work which exists in significant numbers in the national economy. On May 30, 2008, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review.

**B.  Non-medical and Testimonial Evidence**

Plaintiff was born on July 19, 1973 in the Dominican Republic, where she acquired an eighth grade education. (Administrative Record ("R.") at 669, 718.) She speaks only limited English. (R. 670, 718, 738.) She migrated to New York City in 1989, where she worked as a housekeeper until the alleged onset of her disability on March 19, 2002. (R. 162, 669-70.) In that capacity, she swept, mopped, washed dishes, did laundry, cleaned bathrooms and otherwise did household maintenance work. (R. 164.) She often lifted items weighing less than ten pounds, but sometimes was required to lift items weighing in excess of twenty pounds, such as vacuum cleaners, furniture and trash bags. (R. 164, 720.) Plaintiff asserts that she is disabled by reason of

2

depression, insomnia, back and knee pain, a stomach hernia, morbid obesity and arthritis, all of which allegedly cause pain and fatigue and impair her ability to work. (R. 163.)

As part of her disability application, plaintiff completed an activities of daily living questionnaire. (R. 173-80.) Plaintiff stated that she took care of her own personal hygiene and grooming needs and took care of her three children. She also stated that, although she had less energy to perform daily activities and socialize as a result of various ailments, she took her three children to school, prepared meals, swept, dusted, ironed, washed clothes, went grocery shopping, traveled on public transportation, and ran other errands by herself on a daily basis. (R. 173-179.) She claimed that she had difficulty paying attention, getting along with relatives, completing tasks, and remembering things. (R. 178-79.) Plaintiff indicated that she was receiving medical treatment and took Tylenol and Motrin to manage her pain. (R. 182.)

At the hearing held on August 30, 3006, plaintiff testified she that she continued to clean houses until the end of 2003. (R. 718-19; 720.) She then participated for several months in a work program through public assistance. (R. 723.) Plaintiff claimed to have been depressed since 1998. (R. 723.)

At the hearing held on December 6, 2007, plaintiff testified that she was unable to work due to a hernia, diarrhea, psychiatric problems, back and leg pain, obesity, and vision problems. (R. 672-76.) With respect to her emotional problems, plaintiff testified that she had difficulties with concentration and attention, and had been in treatment since 2001. (R. 674, 682, 723, 732.) She reported having problems with her family and children, but indicated that her monthly visits to her psychiatrist helped her greatly and acknowledged that medications improved her symptoms. (R. 674, 682.) Plaintiff testified that she could pick up a gallon of milk without

3

difficulty, but that a twenty pound bag of potatoes would be too much for her. (R. 677, *see also* R. 724.) She estimated that she could sit for thirty minutes, stand for twenty to twenty-five minutes, and walk for about two or three blocks at one time. (R. 677, *see also* 724-25.)

Plaintiff also testified that she lived in an apartment with her three sons, who helped her shop for groceries, clean the apartment, prepare meals, do the laundry, pay bills, take her medication, and travel on public transportation. (R. 175, 677-79, 724-26.) Although plaintiff said she had difficulty leaving her apartment by herself due to fear of large crowds, she indicated that she went to church with her sons on a regular basis, and sometimes went out with a female friend "to unwind." (R. 676, 681, 727, 734.) She said she spent her days listening to relaxation tapes provided by her psychologist and watching television, but was often subject to crying spells for no specific reason. (R. 729, 731-32.)

### B. Vocational Evidence

Vocational expert ("VE") Pat Green testified at the hearing on December 6, 2007 that plaintiff's past relevant work as a house worker was classified as "semi-skilled at a medium level" in the Directory of Occupational Titles. (R. 684.) The VE indicated that the skills acquired by plaintiff in that capacity are not transferrable to other types of work. (R. 684.)

According to the VE, a claimant of plaintiff's age, education and work history would not be able to perform plaintiff's previous work, assuming that she could: (1) carry out simple instructions, (2) sustain attention and concentration sufficient to do unskilled work; (3) relate to co-workers and supervisors, and (4) adapt to changes in the workplace, but (5) was limited to unskilled, low stress, sedentary work, consisting of simple, repetitive tasks not requiring attention for more than two hours at a time without a break. (R. 684-85.) However, the VE identified other

4

jobs in the regional and national economy that would be better suited to a claimant with plaintiff's limitations, including sorter, toy stuffer, and hand bander. (R. 685.)

If it were further assumed that the claimant was: (1) unable to lift more than ten pounds; (2) could not stand more than twenty minutes at a time, (3) could not sit for more than 30 minutes at a time; (4) could not walk for more two blocks at a time, and (5) could not work for more than four to six hours during an eight-hour work day, the VE indicated that there would be no jobs available for that claimant. (R. 686.) Claimant also would be precluded from the alternate jobs identified by the VE if she needed to be predominantly by herself during the workday, with no interaction with supervisors and limited interaction with co-workers. (R. 687.)

### C. Medical Evidence

Plaintiff's medical records show that she has had a history of emotional problems since October 2003, when she was diagnosed with Post Traumatic Stress Disorder ("PTSD") and depression arising in part from a 1991 rape and her father's death in 1998. (R. 268-277). In her intake assessment at Brookdale University and Medical Center ("Brookdale"), a therapist observed that plaintiff was cooperative, fully oriented, had normal speech, and exhibited coherent thought content. (R. 274.) Plaintiff expressed feelings of helplessness and worthlessness, complained of auditory and visual hallucinations, and exhibited some difficulties with attention and concentration. (R. 275.) The therapist nonetheless ruled out major depression with psychotic features, and noted that plaintiff had no suicidal or homicidal ideations. (R. 274-75.)

Plaintiff attended psychiatric group therapy and received medication management at Brookdale from October 2003 through April 2004 for complaints of depression and anxiety. (R. 184-214, 268-375.) Her therapists observed, *inter alia*, that:

5

- On December 19, 2003, plaintiff reported feeling "less depressed" (R. 208);

- On December 22, 2003, plaintiff was "encouraged to increase activity level" to help her cope with her depression and appeared "to be in a more upbeat mood" (R. 208);

- On February 2, 2004, plaintiff reported that "she no longer fears passing by the place where the rape occurred and no longer had thoughts of revenge" (R. 203);

- On March 17, 2004, plaintiff was advised to "increase activity level to distract herself from her family's issues" that were causing anxiety and depression (R. 191);

- On April 19, 2004, plaintiff "appeared to be in an upbeat mood," and reported "decrease in depression" (R. 185);

- On April 28, 2004, plaintiff reported improved sleep and feeling less depressed (R. 184).

On February 27, 2004, Dr. Espiridon Elio, Jr., a psychiatrist, noted that plaintiff was depressed, but was sleeping better and had no undue side effects from medication (Paxil and Seroquil). (R. 199, 474.) On April 28, 2004, plaintiff told Dr. Elio that she was doing well, feeling less depressed, sleeping better, and experiencing no side effects from medication. (R. 486.) From August 2004 through June 2007, Dr. Elio noted that plaintiff's condition, mood and affect were stable, her demeanor was pleasant, and she had no side effects from medication. (R. 424, 497, 504, 528, 539.)

Dr. Soo Park, a consultative physician, performed a physical examination on May 14, 2004. (R. 217-19.) Plaintiff stated that she had worked as a housekeeper until 2003. (R. 217.) She also reported a history of depression and auditory hallucinations, as well as migraines and back, leg and knee pain for which she took Motrin, and complained of abdominal pain that radiated to the groin. Dr. Park found that plaintiff was only mildly limited in lifting, bending, walking and standing. (R. 217.) Plaintiff undressed and dressed and got on and off the examination table with no difficulty. (R. 217.) Dr. Park prescribed an antibiotic and Motrin.

6

In May 2004, Dr. Herbert Meadow conducted a psychiatric evaluation in which he diagnosed plaintiff with mild to moderate dysthymia, but found that plaintiff was only mildly depressed. (R. 215-16.) According to Dr. Meadow, plaintiff did not appear to be anxious, her affect was appropriate, and her memory was intact. (R. 215.) Intelligence level was in the low to average range, and her insight and judgment were unimpaired. (R. 215.) Dr. Meadow prescribed medications, but found that plaintiff's psychiatric diagnosis would not interfere with her ability to function, and that if plaintiff was unable to work, it would be for physical, not psychiatric reasons. (R. 215.)

Dr. J. Minola, a State agency psychiatric consultant, reviewed the evidence of record on June 15, 2004, and determined that plaintiff's mild dysthymic disorder did not meet or equal any impairment listed in Appendix 1, 20 C.F.R. § 416.920(d). (R. 238-51.) He found that plaintiff had mild restrictions in performing the activities of daily living and maintaining social functioning, concentration, persistence, and pace. (*Id.*) She also had moderate limitations in: (1) maintaining attention and concentration for extended periods; (2) sustaining an ordinary work routine without special supervision; (3) working in coordination or proximity to others without being distracted by them; and (4) making simple work-related decisions. (R. 230.) However, plaintiff had no significant limitations in understanding, remembering, and carrying out simple instructions, interacting appropriately with the general public, accepting directions from supervisors, getting along with co-workers, and responding appropriately to changes in the work setting. (R. 229, 230.)

Plaintiff's records from group therapy for the 2004 to 2007 time period indicate that plaintiff spent time with family and friends, had a boyfriend, attended social events, and took

leisure trips to various locations such as the Dominican Republic, Puerto Rico, and California. (R. 256, 312, 336, 347, 349, 442, 434.)

## II. DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court reviewing the final determination of the Commissioner must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide

a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJ's, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings[.]" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (internal quotations omitted).

B. **Determining Disability**

To receive disability benefits, plaintiff must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Plaintiff establishes disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). Plaintiff bears the initial burden of proof on disability status and is required to demonstrate that status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether plaintiff is disabled under the Act as set forth in 20 C.F.R. § 416.920. First, plaintiff is not disabled if she is working and performing "substantial gainful activity." 20 C.F.R. § 416.920(b). Second, the ALJ considers whether plaintiff has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or

mental "ability to conduct basic work activities." 20 C.F.R. § 416.920(c). Third, the ALJ will find plaintiff disabled if her impairment meets or equals an impairment listed in Appendix 1. 20 C.F.R. § 416.920(d). If plaintiff does not have a listed impairment, the ALJ makes a finding about plaintiff's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 416.920(e). In the fourth step, plaintiff is not disabled if she is able to perform "past relevant work." 20 C.F.R. § 416.920(e). Finally, in the fifth step, the ALJ determines whether plaintiff could adjust to other work which exists in the national economy, considering factors such as age, education, and work experience. If so, plaintiff is not disabled. 20 C.F.R. § 416.920(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that plaintiff could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

    **D.**    **Analysis**

The Commissioner moved unopposed for affirmation of the denial of benefits. As a *pro se* litigant, plaintiff's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, the court will construe plaintiff's pleadings and papers "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*emphasis omitted*). The court finds that the ALJ's decision applied the correct legal standards and is supported by substantial evidence. The denial of social security disability benefits and supplemental security income is thus affirmed.

### 1. Plaintiff Has Not Engaged in Substantial Gainful Activity

The ALJ decided the first step in plaintiff's favor, finding that she had not engaged in substantial gainful activity since March 19, 2002, the alleged onset date for her disability. (R. 16.) As this finding does not affect the court's determination that plaintiff is not entitled to the benefits sought, and in deference to plaintiff's *pro se* status, the court will not disturb the ALJ's determination. However, as the defendant notes in its memorandum of law in support of its motion for a judgment on the pleadings, the record would support a finding that plaintiff continued to clean houses in 2003. (*See* R. 217, 718-19; 720; Def.'s Mem. at 11.)

### 2. Plaintiff Had a Severe Impairment

At step two, the ALJ found that plaintiff suffered from severe mental impairments and obesity, but that other symptoms such as headaches, back and leg pain, and blurry vision did not constitute severe impairments. (R. 16.) This court agrees. The medical evidence shows that plaintiff had pain and stiffness in her back and joints with some restriction to her activities. However, such ailments cannot be deemed severe, as plaintiff's complaints of severe back and leg pain are unsupported by adequate treating source evidence such as MRIs, nerve conduction studies, clinical findings, or prescribed potent pain medications.

### 3. Plaintiff's Severe Impairments Did Not Meet or Medically Equal Any Listed Impairment

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1. 20 C.F.R. § 416.920(d). The court concurs with the defendant that the only applicable Appendix listing here is Section 12.04, which deals with "affective disorders," as pertains to plaintiff's mild dysthymic disorder and depression. *See* 20 C.F.R. Part 404, Subpart B, Appendix 1 § 12.04.

(Def.'s Mem. at 12.) State psychiatric consultant Dr. Minola assessed the medical evidence and found that plaintiff's affective disorders did not rise to the level of severity that would warrant a *per se* finding of disability. (R. 238.) A careful review of plaintiff's medical record and testimony does not reveal any evidence to contradict or undermine Dr. Minola's conclusion, which supports the ALJ's determination.

### 4. The ALJ Correctly Determined Plaintiff's Residual Functional Capacity

The ALJ further found at step four that plaintiff has the residual functional capacity to meet the demands of sedentary work.[1] (R. 17-18). The court concurs that plaintiff's physical ailments result in only mild impairment of her ability to perform the usual activities of daily living and to engage in social activities. For instance, Dr. Park examined plaintiff in May 2004, and determined that plaintiff had only mild limitations in lifting, bending, standing, and walking. (R. 219.)

With respect to potential psychiatric limitations, Dr. Medow and Mr. Minola both opined that that plaintiff's disorders did not interfere with her ability to function. (R. 215-16.) Dr. Minola determined that plaintiff had no significant limitations in understanding, remembering, and carrying out simple instructions and directions, accepting direction from supervisors, getting along with co-workers, and responding appropriately to changes in the work setting. (R. 229-30.) Similarly, plaintiff's psychologist and therapists repeatedly noted that plaintiff was doing well and that her depression was stable. (*See, e.g.*, R. 347-50, 424, 431, 432, 486, 297, 504, 528, 539.) Plaintiff's treatment plan review from Brookdale dated March 8, 2006 states that plaintiff had

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *See* 20 C.F.R. §404.1567(a).

made substantial progress with her post traumatic stress disorder and moderate progress regarding her depression. (R. 280.) Dr. Elio consistently reported that plaintiff's psychiatric medications improved her sleep, lessened her depression, and had no adverse side effects. (R. 424, 431, 486, 497, 504, 528.)

Plaintiff's testimony that she can stand for no more than twenty minutes, sit for no more than thirty minutes, and walk for no more than two to three blocks at a time is not supported by clinical or diagnostic findings or potent pain medication prescriptions. (R. 677, 19.) Although plaintiff testified that her depression limited her social activities and made her fear public outings, her records show that plaintiff goes to church and group therapy, attends parties and has friends. (R. 312, 335, 336, 347-49, 434, 442, 526.) She is able to travel independently by public transportation and even leave the country by herself, as evidence by her trips to the Dominican Republic, Puerto Rico, Florida and California. (R. 312, 333-336, 434, 526, 528, 677, 681.) Plaintiff further reported an ability to perform the normal activities of daily living. In her disability application, she stated that she took care of her own personal hygiene and grooming needs, took care of her children, cooked meals, did housework, and socialized. (R. 174-78.)

In sum, plaintiff's records do not support plaintiff's claim that she is disabled. Indeed, the court notes that plaintiff was advised on numerous occasions by her therapists at Brookdale "to increase [her] activity level" to help her cope with her psychiatric disorders. (R. 191, 208). In light of the foregoing, the court concurs with the ALJ that plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms arising from her impairments was not credible.

### 5. Plaintiff Can Perform Other Work

Finally, the ALJ determined at step five that, although plaintiff is unable to perform any past relevant work, other work exists in significant numbers in the national economy that she can do. (R. 19.) Specifically, the VE identified three jobs that could be performed by an individual of plaintiff's age, education, work experience, and residual functional capacity (e.g., unskilled sedentary work consisting of simple repetitive tasks not requiring her attention for more than two hours at a time without a break and not requiring that individual to make significant work related decisions or plan on her work). (R. 685-686.) An individual in plaintiff's situation, who can meet basic mental demands such as remembering simple instructions and responding appropriately to supervision, co-workers, and changes in the work setting, could work as a sorter (15,000 jobs nationally and 2,000 jobs regionally), toy stuffer (300,000 jobs nationally and 2,400 jobs regionally), or hand bander (19,651 jobs nationally and 1,319 jobs regionally). (R. 685-86.) The court thus affirms the ALJ's conclusion that plaintiff was not disabled because she could perform work which exists in significant numbers in the national economy. (R. 19-20.)

### III. CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is granted. The ALJ's decision denying plaintiff's request for disability insurance benefits and supplemental security income is affirmed.

SO ORDERED

DATED:     Brooklyn, New York
              March 26, 2009

                                      _____/s/_____
                                        DORA L. IRIZARRY
                                      United States District Judge